UNITED STATES 1DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel.<br>REGINA DEFRANCISCO,<br><br>Petitioner,<br>v.<br><br>MARY SIGLER, Warden, Dwight Correctional Center<br><br>Respondent. | Case No. 08 C 6656<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Regina DeFrancisco's ("DeFrancisco") petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254(d)(1). DeFrancisco has also moved to amend her petition to add further grounds for federal habeas relief and to stay this case pending resolution of state court proceedings. For the following reasons, the Court denies DeFrancisco's (1) Motion to Amend, (2) Motion to Stay, and (3) habeas petition.

## BACKGROUND

The Court adopts the underlying facts set forth by the Illinois Appellate Court in *People v. Defrancisco*, No. 1-04-2777 (Ill. App. Ct. 2006) (affirming jury trial verdict against petitioner on direct appeal) because DeFrancisco does not present clear and convincing evidence challenging those facts. *See* 28 U.S.C. § 2254(e)(1); *see also Virsnieks v. Smith*, 521 F.3d 707, 714 (7th Cir. 2008).

**I. Factual Background**

A jury convicted DeFrancisco of felony murder predicated on armed robbery for the killing of Oscar Velasquez and she was sentenced to thirty-five years of imprisonment. (R. 21, Ex A at C6-7). It all began in June, 2000, when, after going on a date with Oscar, DeFrancisco falsely informed him that she was going to jail. (R. 21, Ex B at 10). At DeFrancisco's instruction, her sister Margaret DeFrancisco ("Margaret") told Oscar that she needed $1,000 to bail out DeFrancisco. (R. 21, Ex B at 6). After Oscar loaned Margaret the money, he discovered the sisters had been lying and called repeatedly demanding the return of his $1,000. (R. 21, Ex B at 10). The evidence at trial showed that Oscar made 24 phone calls to DeFrancisco's residence between May 30, 2000 and June 4, 2000. (R. 21, Ex B at 12).

On June 6, 2000, Margaret called Veronica Garcia ("Veronica") and asked to borrow a gun. ((R. 21, Ex B at 6). Veronica agreed, and she brought the gun to DeFrancisco's family residence where Margaret and DeFrancisco were discussing how to get more money from Oscar. (R. 21, Ex B at 6, 10). At trial, DeFrancisco testified that she never told anyone she intended, or planned, to rob or kill Oscar. (R. 21, Ex B at 11, 12). Oscar's phone records, which were admitted into evidence at trial, showed that a call was made from DeFrancisco's phone to Oscar's phone on June 6, 2000, at 7:06 p.m. (R. 21, Ex B at 8). Shortly thereafter, Oscar arrived at DeFrancisco's residence and Margaret greeted him while DeFrancisco waited in the basement. (R. 21, Ex B at 6). Margaret asked if anyone knew he was there, and Oscar replied that nobody did. (R. 21, Ex B at 6, 8). Oscar proceeded downstairs to see DeFrancisco, and Margaret followed with the gun concealed behind her back. (R. 21, Ex B at 6). Veronica testified that she heard a gunshot, saw Margaret ascend the stairs with the gun and saw Oscar on the basement floor bleeding from his ears. (R. 21, Ex B at 7).

2

DeFrancisco and Margaret took Oscar's cell phone, keys, gun, chain, and wallet, containing at least $600. (R. 21, Ex B at 8, 9). Margaret and DeFrancisco split the money and later tried to sell both Oscar's car and his gun. (R. 21, Ex B at 8, 11).

At trial, DeFrancisco testified. She stated that (1) she had come out of her bedroom to find Oscar in the living room, (2) Oscar followed her downstairs and began screaming and cursing at her, and (3) he pulled out a gun. (R. 21, Ex B at 10-11). DeFrancisco further testified that she curled up on the floor and begged Oscar not to kill her before hearing a gunshot and looking up to see Margaret holding a gun and Veronica at her side. (R. 21, Ex B at 11). DeFrancisco testified that Veronica urged them to get rid of Oscar's body and any identification, so they wrapped his body in clear plastic and a comforter, carried it to his white Camaro, and disposed of it in an alley in Veronica's neighborhood. (R. 21, Ex B at 11). After receiving a report of a body on fire, Chicago Police Detective Timothy O'Meara ("O'Meara"), an expert in fire investigations, examined the body which was later identified as Oscar Velasquez. (R. 21, Ex B at 3). O'Meara concluded that a flammable liquid had been applied to the body before it was burned, and he found an empty bottle of nail polish remover in the vicinity. (R. 21, Ex B at 3). Dr. Albert Fusaro conducted an autopsy on Oscar's body and concluded that Oscar had died as a result of a gunshot wound and the burning occurred postmortem. (R. 21, Ex B at 3).

Jessica Tellez Benitez ("Jessica") testified that on June 7, 2000, she went to DeFrancisco's residence where there was a big stain near the door that looked like blood, and that DeFrancisco was mopping the basement stairs. (R. 21, Ex B at 8). Jessica asked about the stain and DeFrancisco said "we killed a guy." (R. 21, Ex B at 8). DeFrancisco told Jessica that they had called Oscar over to return the $1,000 he loaned them, but they never intended to return it. (R. 21, Ex B at 8).

3

DeFrancisco further stated that they put plastic down in the basement where Oscar was shot before he arrived. (R. 21, Ex B at 8). Jessica testified that DeFrancisco had recounted being surprised to find Oscar carrying a gun because he was not a violent person. (R. 21, Ex B at 9). Jessica testified that DeFrancisco and Margaret split the $600 in Oscar's wallet. (R. 21, Ex B at 9). DeFrancisco admitted talking to Jessica but testified she had not said anything to Jessica about a plan to rob or kill Oscar. (R. 21, Ex B at 12).

Maria Constantino ("Maria"), a neighbor who lived upstairs from DeFrancisco's residence, testified that she saw DeFrancisco, Margaret, and another girl load a large plastic-wrapped object into a white Camaro on June 6, 2000. (R. 21, Ex B at 5). Maria further testified that about a week after seeing this incident DeFrancisco came to her door crying and said "we killed him." (R. 21, Ex B at 5). DeFrancisco described to Maria how Margaret shot Oscar from behind when he stepped on some plastic and how the three girls dumped the body and burned it. (R. 21, Ex B at 5). DeFrancisco told Maria that they did it for the money, about $600. (R. 21, Ex B at 5). DeFrancisco was ultimately arrested on October 17, 2002, after a high speed police chase. (R. 21, Ex B at 12).

## II. Procedural Background

On July 8, 2004, a jury in the Circuit Court of Cook County convicted DeFrancisco of felony murder predicated on armed robbery. (R. 21, Ex A at C6). On September 9, 2004, the trial judge sentenced DeFrancisco to 35 years of imprisonment. (R. 21, Ex B at C7). On direct appeal to the Illinois Appellate Court, DeFrancisco argued that: (1) trial counsel was ineffective (a) for failing to request jury instructions on self-defense and theft, a lesser included offense of felony murder predicated on armed robbery, and (b) for failing to request that the trial court ask the jury for

4

clarification regarding its specific source of confusion with respect to armed robbery; (2) the trial court abused its discretion in allowing the State to dismiss the intentional and knowing murder charges after the defense rested; (3) the trial court committed prejudicial error in allowing admission of gruesome photographs of the deceased victim; and (4) pervasive prosecutorial misconduct occurred. (R. 21, Ex C at 1).

The appellate court rejected each of DeFrancisco's arguments and affirmed her conviction and sentence. (R. 21, Ex B at 2). The appellate found that under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), trial counsel was within her discretion on all counts. (R. 21, Ex B at 13-20). The appellate court found that a jury instruction on self defense was not necessary because under Illinois law self-defense is not defense in felony-murder. (R. 21, Ex B at 17). The appellate court did not address the viability of an ineffective counsel claim with respect to the jury instructions on the lesser-included offense of theft because the question was not of record and had to be raised in a collateral proceeding. (R. 21, Ex B at 17-18). The appellate court analyzed DeFrancisco's ineffective counsel claim for failure to clarify the jury's confusion with respect to armed robbery under the standard set forth by the Illinois Supreme Court in *People v. Childs*, 159 Ill. 2d 217, 228-229. The appellate court rejected this claim because there was nothing in the record to suggest that the jury's question about armed robbery was not answered. (R. 21, Ex B at 19-20). The appellate court found the trial court had not abused its discretion in allowing the State to *nol-pros* the intentional and knowing murder charges citing previous cases finding that a defendant suffered no prejudice having intentional and knowing murder charges dismissed after jury instructions, leaving only felony murder. (R. 21, Ex B at 21-23). The court noted that DeFrancisco

had testified in her defense that she did not intend or plan to rob Oscar, which would have been a defense to felony murder if the jury had believed her. (R. 21, Ex B at 23).

The appellate court found the trial court within its discretion in allowing the jury to view photographs of Oscar's body, which were admitted to prove the nature and extent of his injuries. (R. 21, Ex B at 24). Lastly, the court rejected DeFrancisco's claim that pervasive prosecutorial misconduct occurred, finding that the trial court's instructions to the jury and rulings on objections were sufficient to cure any error caused by the State's comments during the trial. (R. 21, Ex B at 29). DeFrancisco filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, raising only the claim that her rights to due process and to present a defense were violated when the trial court allowed the State to *nolle presequi* the intentional and knowing murder charges. (R. 21, Ex. F at 10-16). On September 27, 2006, the Illinois Supreme Court denied the PLA. (R. 21, Ex. G at 1). DeFrancisco filed a petition for writ of certiorari in the United State Supreme Court that was denied on October 1, 2007. (R. 21, Ex H at 1).

DeFrancisco filed a *pro se* post-conviction petition in the Circuit Court of Cook County on September 7, 2007 claiming: (1) ineffective counsel on numerous grounds, (2) the trial court abused its discretion in allowing admission of gruesome photographs, (3) the State engaged in prosecutorial misconduct, and (4) appellate counsel was ineffective. (R. 21, Ex I). The trial court denied the post-conviction petition on November 30, 2007. *See* Pet. (Doc. 8) at 3. After failing to file a timely appeal, on June 10, 2008 DeFrancisco filed a motion in the state appellate court for leave to file a late notice of appeal, stating she had not received notice of the trial court's ruling until May 23, 2008. (R. 21, Ex J). The appellate court denied DeFrancisco's motion. (R. 21, Ex K at 1).

DeFrancisco then sought leave to file a late PLA in the Illinois Supreme Court, which the court denied on January 27, 2009. (R. 21, Ex. M).

DeFrancisco concurrently filed a mandamus complaint in the state trial court alleging that she did not receive timely notice that her post-conviction petition had been denied and seeking to compel the clerk of the court to show proof of notice. (R. 21, Ex. N). The trial court denied DeFrancisco's mandamus complaint on September 17, 2008. (R. 21, Ex. O). DeFrancisco also filed a petition for relief from judgment pursuant to 735 ILCS 5/2-1401 on December 8, 2008, alleging that three of the witnesses who testified for the State gave false testimony after police detectives threatened them. (R. 21, Ex. P). The trial court denied the petition on December 15, 2008 and DeFrancisco filed a timely notice of appeal. (R. 21, Ex. R).

On November 10, 2008, DeFrancisco filed the present petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, asserting the following claims: (1) the trial court abused its discretion in (a) allowing the State to introduce gruesome photographs depicting the victim's burned body, (b) denying the admission of Veronica Garcia's taped confession; (2) appellate counsel was ineffective for failing to argue that DeFrancisco's sentence was inappropriate because she was sentenced to thirty-five years despite her lack of prior criminal convictions, while her codefendant, the "trigger-man" was only sentenced to twenty-one years; (3) the State engaged in prosecutorial misconduct by (a) eliciting gang evidence, (b) waiting until the close of evidence to *nolle prosequi* the knowing and intentional murder charges, and (c) making improper comments at trial; and (4) ineffective assistance of counsel. (R. 8 at 10-11).

DeFrancisco alleges ineffective assistance of counsel on five separate grounds: (1) failing to request a jury instruction on self-defense and theft; (2) failing to request that the trial court ask

7

the jury to clarify the specific source of its confusion regarding the armed robbery charge and failing to provide them with an adequate response; (3) failing to object to the State's decision to *nolle prosequi* the intentional and knowing murder charges after the defense rested its case; and (4) failing to obtain Oscar's criminal background. (R. 8 at 11-14).

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of, federal law clearly established by the Supreme Court. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 403 (2000). Under the "contrary to" prong of this standard, a habeas petitioner must show that "the state court confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite [to the Court's]." *Williams*, 529 U.S. at 405. Under the "unreasonable application" prong, a habeas petitioner must show that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an *unreasonable* application of federal law is different from an *incorrect* application of federal law) (emphasis in original). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (citation omitted); *see also Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006) (to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances of the case.").

**DISCUSSION**

**I. Exhaustion and Procedural Default**

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *See Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009). "Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim to the state courts, the exhaustion doctrine precludes a federal court from granting relief on that claim." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Moreover, a "habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *see also Crockett v. Hulick*, 542 F.3d 1183, 1192 ( 7th Cir. 2008). Procedural default prevents a federal habeas court from considering the merits of a claim where: "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet*, 390 F.3d at 514. To avoid the latter type of default, a petitioner must invoke "one complete round of the state's established appellate review process" by presenting claims both to the Illinois Appellate Court and to the Illinois Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Here, DeFrancisco has only brought one claim from her direct appeal through a complete round of the Illinois review process – the claim that the trial court erred in allowing the State to drop the intentional and knowing murder charges at the close of the defense's case. (R. 23, Ex. F). All of DeFrancisco's other claims raised in the present petition are

procedurally defaulted: the remaining claims on direct appeal were not included in her PLA and she failed to timely appeal the denial of her postconviction petition.

**II. Excusing Procedural Default**

This Court may still hear DeFrancisco's procedurally defaulted claims if she can demonstrate both cause for and prejudice resulting from the procedural default, or that a fundamental miscarriage of justice would occur if this Court refused to hear her claims because she is actually innocent. *See House v. Bell*, 547 U.S. 518, 536 (2006).

**a. Cause and Prejudice**

A petitioner can demonstrate cause sufficient to excuse a procedural default by identifying "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, a petitioner "must shoulder the burden of showing, not merely that the errors at [her] trial created a *possibility* of prejudice, but that they worked to [her] *actual* and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (emphasis in original).

DeFrancisco only included in her PLA from the direct appeal of her conviction the claim that the trial court abused its discretion in allowing the State to *nolle pros* the intentional and knowing murder charges. DeFrancisco argues that ineffective appellate counsel is cause sufficient to excuse her procedural default of her other claims raised on direct appeal. (R. 24 at 3). In certain circumstances, ineffective assistance of counsel resulting in counsel's failure to preserve issues for review can constitute cause to excuse procedural default. *See Murray*, 477 U.S. at 488-89. Such

11

claims of ineffective assistance of counsel, however, must be adequately presented to the state courts before they may be used to establish cause for procedural default. *See id*.

Here, DeFrancisco's claim of ineffective assistance of appellate counsel cannot serve as a cause that excuses her procedural defaults because she did not properly present her claims for ineffective assistance of appellate counsel before the state courts. In DeFrancisco's post-conviction petition, filed almost a year after the Illinois Supreme Court denied her PLA, she included a claim that appellate counsel was ineffective for failing to argue on appeal that codefendant, the actual shooter, was only sentenced to twenty-one years while DeFrancisco was sentenced to thirty-five years. (R. 21, Ex. I at ) DeFrancisco failed to include any claim in this postconviction petition with respect to appellate counsel's PLA to the Supreme Court. Thus, DeFrancisco's claim of ineffective appellate counsel is itself procedurally defaulted and cannot serve as cause to excuse her other procedurally defaulted claims. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (finding that petitioner could not raise ineffective assistance of appellate counsel as "cause" excusing other procedural defaults when that claim itself was procedurally defaulted).

### b. Actual Innocence

A petitioner may also overcome procedural default if declining to hear her claims would result in a fundamental miscarriage of justice. *See Schulp v. Delo*, 513 U.S. 298, 327-329 (1995). This exception to procedural default is limited to the extremely rare and "extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 321. To meet this high standard, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. A petitioner must demonstrate actual

12

innocence so convincingly that no reasonable jury could convict, which requires "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005). This type of powerful evidence is rarely available, and the vast majority of actual innocence claims are not successful. *See Schulp*, 513 U.S. at 324. DeFrancisco presents limited additional evidence: two affidavits and part of her trial transcript that attempt to show that detectives threatened Luciana Macias, Veronica Garcia and Jessica Tellez into giving testimony unfavorable to DeFrancisco (R. 22 at 2, 7-11). The testimonial evidence introduced by DeFrancisco does not meet the high standard for this narrow exception to procedural default. DeFrancisco has failed to present new reliable evidence of her actual innocence, and the Court will not consider her procedurally defaulted claims. *See Schulp*, 513 U.S. at 327-329.

### III. Preserved Ground

DeFrancisco's only preserved ground for relief is her contention that the trial court erred in allowing the State to drop intentional and knowing murder charges at the close of defense's case. This ground for relief was presented through a complete round of state court review. (R. 22, Ex. G). Respondent, however, asserts that this claim too is procedurally defaulted because DeFrancisco presented it in state law, and not federal law terms in state court. (R. 20 at 14). If DeFrancisco had presented the issue in state law terms it would be non-cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *McCloud v. Deppisch*, 409 F.3d 869, 874 (7th Cir. 2005). The Court need not address this distinction, however, because DeFrancisco's claim is without merit.

13

The Illinois appellate court rejected this claim for relief on the merits in a decision that was not contrary to or an unreasonable application of federal law. *See Williams*, 529 U.S. at 402-03. (R. 22, Ex. B at 20-23). Petitioner has failed to present any Supreme Court case that challenges the broad discretion that a trial court has to dismiss charges. This Court recognizes the "unique difficulties encountered by *pro se* inmate litigants and [is] well aware of a court's obligation to liberally construe" this petition. *Jones v. Hamelman*, 869 F.2d 1023, 1026 (7th Cir. 1989). However, DeFrancisco faces a high burden of showing that the state appellate court was not only incorrect in its application of federal law, but objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

Here, DeFrancisco had notice of the felony murder predicated on armed robbery charge, and her own testimony at trial, if believed, would have provided a defense against the charge. The appellate court noted that "[i]f the jury had believed that [DeFrancisco] and Margaret did not plan or intend to rob Oscar . . . then the jury would have been required to find [DeFrancisco] not guilty of felony murder based on armed robbery." (R. 21, Ex. B at 22-23). The appellate court came to the sound conclusion that DeFrancisco, who testified on her own behalf that she did not intend to rob or kill Oscar, was not prejudiced by the State's *nol-prossing* of the intentional and knowing murder charges after the defense rested. (R. 22, Ex. B at 20-23). Because the appellate court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law under § 2254(d)(1), DeFrancisco is not entitled to federal habeas relief on this claim.

**IV. Motion to Stay**

DeFrancisco also moves the Court to stay her habeas proceedings. It is within the Court's discretion to stay a mixed habeas petition and hold it in abeyance while a petitioner exhausts state

14

claims. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). However, "if employed too frequently, [abeyance] has the potential to undermine" the purposes of the AEDPA to reduce delays in the execution of sentences, encourage petitioners to initially seek collateral state court relief, and incentivize petitioners to exhaust all their claims in state court before filing their federal petition. *Rhines* at 277. In *Rhines*, the Court held that district courts should only use stay and abeyance where: (1) there is good cause for the petitioner's failure to exhaust state claims; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in dilatory litigation tactics. *Id.* at 277-78. A motion to stay is sometimes appropriate when a petitioner presents a mix of exhausted and non-exhausted claims. *Rhines* at 278. However, the Court will only grant a stay if there is "good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. A petitioner can show good cause if she filed her federal habeas petition while state claims were pending merely "to ensure that [the petitioner] does not miss the one-year deadline." *Dolis v. Chambers*, 454 F.3d 721, 725 (7th Cir. 2006).

Here, DeFrancisco has neither a pending direct appeal nor a pending petition for post-conviction relief. (R. Ex. G, Ex. M). Instead, DeFrancisco moves to stay her federal habeas petition pending resolution of her petition for relief from judgment filed pursuant to 735 ILCS 5/2-1401 in the Circuit Court of Cook County. (R. 19 at 1). Under the Illinois Code of Civil Procedure, Section 2-1401, litigants, including criminal defendants, can challenge the facts underlying a final judgment. *See People v. Pinkonsly*, 802 N.E.2d 236, 241 (Ill. 2003). Specifically, "[a] section 2-1401 petition for relief from a final judgment is the forum in a criminal case in which to correct all *errors of fact* occurring in the prosecution of a cause, unknown to the petitioner and court at the time judgment was entered, which, if then known, would have prevented its rendition." *People v. Haynes*, 737

N.E.2d 169, 182-83 (Ill. 2000) (emphasis added). However, petitions for relief from judgment under 735 ILCS 5/2-1401 are not relevant to a federal court's exhaustion and procedural default analyses, which are limited to direct appeals and post-conviction proceedings. *See Lewis*, 390 F.3d at 1025 ("petitioner [must] assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings."); *see also*, *United States ex rel. Giampaolo v. Anglin*, No. 07 C 2612, 2008 WL 4133383, at *3 (N.D. Ill. Aug. 20, 2008) (St. Eve, J.) (post-conviction act provides different statutory relief than Section 2-1401); *People v. Vincent*, 871 N.E. 2d 17, 24 (Ill. 2007) (same). This is because Section 2-1401 only addresses factual issues–not legal or constitutional ones–and thus serves a different purpose than the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*. *See People v. Bramlett*, 806 N.E. 2d 1251, 1254 (Ill.App.Ct. 2004); *see also People v. Welch*, 877 N.E. 2d 134, 140 (Ill. App. Ct. 2007). Because DeFrancisco's only pending state court proceeding is a petition for relief from judgment the Court denies DeFrancisco's Motion to Stay.

**V. Motion to Amend**

DeFrancisco has also moved this court to amend her petition for federal habeas relief. (R. 22). The proposed amendment presents DeFrancisco's additional ineffective assistance of appellate counsel claim alleging her appellate counsel was ineffective for failing to include all of her directly appealed claims in the PLA. As discussed above, this claim itself is procedurally defaulted because DeFrancisco failed to bring it along with the other ineffective appellate counsel claim in her *pro se* postconviction petition. *Gaetz*, 565 F.3d at 352. Therefore, DeFrancisco's Motion to Amend is denied.

16

## CONCLUSION AND ORDER

For the reasons stated, DeFrancisco's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1) is denied. The Court also denies DeFrancisco's Motion to Amend and Motion to Stay.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 17, 2010